Good morning. May it please the Court, Richard Stone for appellants. The decisions below are based upon a fundamental legal error and three other legal errors which follow from this. First, the Court mistakenly found that Section 3B2 of the ICA divests the Court of Jurisdiction and Competence to determine a factual issue predicate to our ICA claim, whether Yahoo violated the conditions of its 2000 exemptive declaration. Second, the Court mistakenly failed to address plaintiffs' standing to pursue 47B claims, not as a third party, but as a derivative plaintiff, and the case law is clear on this. Third, the Court also failed to address several district court authorities, which we provided to Your Honors in connection with our 28J application, which made clear that claims under the Investment Company Act, as opposed to claims involving fraud in connection with the purchase and sale of securities, do state UCL claims. And finally, the Court did not promptly consider all of our allegations in connection with its improper conclusion that we not pled unjust enrichment. The decision below is based entirely on a judicial presumption, the Court's failure to revoke the registration cannot be second-guessed by the Court, that the only remedy for violated exemptions is contemporaneous revocation by the SEC, and third, that the ICA does not exempt from the definition only companies which show continuous compliance, meaning you don't have to show continuous compliance. Roberts. I was just curious in thinking through this case. Let's assume there was a private right of action, which is a huge assumption. I'm not making it. I just want to get to my question. How exactly was the pension fund damaged by Yahoo's investment in Alibaba? I'm just curious. They were not violated. There was no injury related to the investment in Alibaba. The injury that we're seeking is the hundreds of millions of dollars paid in connection with compensation to employees, officers, and directors that was in violation of the statute. When you're an unregistered investment company, the punitive policy is that you can't enter into contracts. Had they been a registered investment company, the amount of money they would have gotten paid would have been much less. There's a completely different standard of compensation that applies to 40-act companies than to regular public companies. That's what they avoided by doing this. I approve it. Thank you. Okay. So Section 3B2 cannot be read in this fashion. 3B2 states only that the SEC can It is not a unique grant of power in any respect. Section 38A of the ICA states the same thing. It gives the SEC the power to adopt any rule, order, or regulation under the Investment Company Act. Each of the securities laws provides the same authority, as we showed in our reply. Well, 3B2 goes on to say whenever the commission, either on its own motion or on application, finds circumstances which give rise to the order granting the application no longer exists, then the commission shall revoke. So it not only, 3B not only gives them powers to issue, it gives them powers to revoke as well. Judge Ebel, that's correct. But they have the same power to revoke any rule or regulation or order under the 40 Act, under the 34 Act, and under the 33 Act. So if the court is going to interpret the power to issue and revoke as meaning that only the SEC can interpret, then we don't have 10b-5 review, we don't have 16b review, we don't have 14e review, and the O'Hagan case was wrongly decided because courts don't have jurisdiction to determine the import and extent of regulations and apply facts to regulations. We have a dual system. The SEC has authority to interpret its rules, regulations, and orders, and so do courts. And the jurisdiction granted under the 40 Act is clearly broad enough to cover that. It doesn't cover simply claims arising under the 40 Act. It covers any claim to enforce any liability or duty created, created by the 40 Act, not arising under the 40 Act. Kennedy. So is it your position that the pension fund or indeed any interested party would not have to go to the commission to get a commission revocation of this exemption, but just any time they pleased, at any time they could say, you know what, for the last 20 years we don't think you were in compliance, and surprise, the draconian remedy is that all of your contracts for the last 20 years are invalid. Is that much of a way to run a railroad? Your Honor, I'm unaware of any method by which we could go to the SEC. Isn't there a specific provision allowing you to petition the SEC to revoke? No, there's not, Your Honor. There's a specific provision allowing us to object and appeal the actual order itself. So in 2000, when the order was issued, we could have appealed that. There was no reason to appeal it. It was validly issued. We're not questioning the authenticity or the validity of the order. What we're saying is a condition contained in the order, okay, in the order issued by the Investment Management Division was violated. What does 3B mean when it says the commission on its own motion or upon application? Are you saying application does not mean that your client as a stockholder could make an application to the commission to revoke the exemption? I am unaware of any process allowing us to do that. But what does the words upon application mean? Who, upon application? That would be on application of the person who received the order. They could go to the SEC and say we're not sure if this order applies. Has that been so construed that way? Companies can go to the SEC. Is there some official ruling, some reg or ruling or something we would give Chevron deference to that limits application to the company who has the ruling in the first place? Not that I'm aware of, Your Honor, but I am unaware of any process or procedure whereby we could petition the SEC to have them make a finding that a condition was violated. When the order was issued in 2000, had there been an issue, we could have gone to the appellate court and challenged that. That didn't happen. But, Your Honor, the point here is all rules and regulations and orders, all of them, 10b-5 as a rule, 14e as a rule, are adopted the same way and the SEC has the same authority to amend them or withdraw them. They could withdraw a 10b-5 pursuant to an order tomorrow. That authority to issue an amend can't mean that courts are precluded from reviewing, because courts do review. O'Hagan is all about how far does 10b-5 spread, what's the fiduciary duty requirement. Courts routinely have that. 3b-2 doesn't change that. It is not a unique grant of power whatsoever. It seems to me, counsel, that when they get to stand up, they're going to talk about our Northstar case, which I believe Judge Schroeder wrote for this Court. That seems to me a very bad case for you. So can you explain? I've read through the briefs. I didn't really see a really good explanation as to why Northstar is not a really bad case for you. Can you explain why we can ignore it or how do we get around it? Northstar deals with whether or not a third party has a private right of action under 47b. We are not a third party. The Court found that we had promptly pled a derivative claim. We stand in the shoes of Yahoo. 47b is a limited statutory right of action, and we've cited a dozen cases, and there are no contrary authorities. The company itself under 47b can seek rescission or rescissionary damages. 47b says that the Court is involved in that process, and it tells the Court what it may and may not do with respect to evaluating evidence. It's entirely clear, and they haven't disputed, that Yahoo itself, if there's a violation of the Investment Company Act, can void contracts under 47b. And all of the cases say that a derivative party can do the same. Northstar says that 47b does have rights-creating language. It's simply that it's narrower. It doesn't create rights for third parties. It creates rights for contracting parties. But their takeaway from Northstar is that there's no private right of action under this Act, and if that's the case, why would it matter if it's a derivative suit or a third party? A careful, even a cursory read of Northstar is only dealing with third party claims and not with the company's claims. If 47b doesn't mean that the company has the right to rescind contracts, it has absolutely no meaning. The SEC can't enforce 47b. The SEC can't come in and say, I want you to rescind the contract. It's a limited right between a company and a contracting party, okay? And that's what it's meant. And all of the cases we cite, and they're unrebutted, many of them post-Northstar, indicate that there is a derivative right of action or that the company has that right of action. And any court distinguished Northstar in the way that you have? It distinguished it by saying that Northstar is dealing with a traditional third party claim as to a private right of action, and what 47b does uniquely is provide only contracting parties, the company and the party it contracts with, with the right to rescind or for rescissionary damages. That's how it's easily distinguished. Kennedy. So I'm worried if we're giving us some kind of an inconsistent argument. You're saying Northstar is not controlling because we are suing derivatively as if we were the company itself. But earlier you said, when I talked about 3b, about upon application the commission can reexamine, you said, well, that doesn't apply to us because that application would have to be from the company. But if you are suing derivatively, then you would be the company. So it seems to me for 3b, you're saying, no, we're not the company. But for Northstar, you're saying we are. Are you giving us inconsistent arguments? Your Honor, I said I didn't know what that provision meant. I said it might mean that. Second of all, as a derivative plaintiff, we can't simply act in the shoes of the company. We can bring lawsuits in the name of the company. We can't take over the company and run it and go to the SEC and say we have to do that. Well, bring lawsuits would be bringing a lawsuit or a claim to the commission to revoke its exemption. I don't believe even as derivative plaintiffs we would have authority to do that. I'm unaware of any mechanism to do that. Obviously, the company could have done that. Yahoo could have done that and gone to the SEC if it wasn't. And asked them to find that they were not in violation. And they didn't do that either, because there is no mechanism to do that. The point is 3b-2 does not limit the Court's jurisdiction. The Court's jurisdiction is broad. It doesn't simply cover claims arising under 47. It covers any claim, any claim, which are our State law claims, where the liability or duty is created by the ICA. A violation of Section 7, failure to register, creates a liability. That liability can be pledged as a breach of fiduciary duty or as a liability of the uniform of the California UCL. And that's what we've done. The Court clearly has jurisdiction to hear this. The cases that we cited, the Rafferty case, the Ford case, the BioVail case, all deal one of them is a Third Circuit case with the circumstance where an order exists, I lack standing to void that order because I'm not a party to that order, but I can bring a claim based upon a violation of that order and have the Court make that factual finding. Denying courts the right to review orders, rules, or regulations simply because the SEC can adopt and retract them ends 10b-5 review. I'll reserve the rest of my time. Thank you, counsel. Good morning, Your Honor. Mark Foster for the defendant, Senate Police, in this matter. Section 3b-2 is the statute that controls here in the first instance. It's a threshold issue. Judge Ebel, as you pointed out, there is a mechanism in the statute for any potentially aggrieved party to challenge the validity of an exemption order. It can go to their government. Has that language, to your knowledge, ever been interpreted in a reported decision about what is meant by, upon its motion or upon application, is there any precedent on that? There is no authority that I am aware of, Your Honor, that interprets that language. And I would point out that it is the plaintiff's burden here to establish that a private litigant has the right to come into court. North Star clearly holds that. DigiMark says it has to be by clear evidence. What do they need to show? Statutory language? Congressional intent? Or maybe one of the cases that have been decided in 78 years since the Investment Company Act became law. There is no such case. They are trying to break new ground here. And this is not the case to break new ground. They point to nothing showing that a private litigant can show up here. Counsel pointed to the alleged broad jurisdictional authority provided by the Investment Company Act. So I'm just curious, if conditions have really changed, maybe because of the purchase of Alibaba stock or other stock, does a stockholder have any remedy, if the stockholder wants to challenge that, that is any remedy under the Investment Act? No. Okay. Our position is that a stockholder does not have a remedy other than to go to the SEC and ask the SEC. Well, there would be plenty of other potential claims. They could allege, you know, abuse of fiduciary duty or fraud or something. But under the Investment Act, you're saying no remedy there. No private right of action for a private litigant to challenge the continued validity of an exemption order issued by the SEC. And as Your Honors recognized up front, Section 3B2 by definition says once you have an exemption, you are not an investment company. So if you're not an investment company, you can't violate the Investment Company Act. That's the situation here, where Yahoo had an exemption. All of plaintiff's claims are predicated on the idea that it was an investment company that violated the Investment Company Act. But it's got the exemption. So it's not an Investment Company Act. And they can't challenge the order other than by asking the SEC to review the issue. They obviously didn't do that here. As I was suggesting, plaintiffs — Can they? How do they do that? I think the word applicant is broad enough. And to take the plain meaning of the language is applicant. You can apply. You can write a letter. As plaintiffs' second volume of excerpts of records show, this whole thing was based on letter writing to the SEC. Counsel can write a letter. How broad is that? Can anybody write a letter? Could I write a letter? Well, I think that there's nothing to limit the SEC's consideration of any issue that's raised by a private citizen. I think that's even founded in the First Amendment, the right to petition your government for redress. It doesn't trigger any requirement. It doesn't trigger any requirement. But the SEC could look at any request raised and decide in its administrative discretion the thorough delegation of power that Congress gave to the SEC and decide, do we do something with this or not? Is this an issue that we should consider or not? And respond. A letter writing probably wouldn't be all that necessary because the SEC was fully aware of these acquisitions. I mean, on the quarterly statements filed with the SEC, it was clearly disclosed about these investments. So this isn't as if this information wasn't formally and actually before the SEC. Absolutely correct, Your Honor. This was disclosed in every single one of the SEC's, every single one of Yahoo's SEC filings for over 10 years. It was there. The SEC specifically corresponded with Yahoo about this investment. And that's in the supplemental excerpts of record that we submitted in this case. So it's clear that the SEC was aware of this investment and determined that it didn't need to do anything. But the issue really here is, does a private litigant get to come into a federal district court and challenge that? The answer is no, because they've pointed to no statutory language, legislative intent, or case law that supports that idea. They point to the general jurisdiction provision of Section 44, where they're talking about the broad, clear jurisdictional power of the courts. Unfortunately, Northstar here is directly and squarely on point, and they don't address this issue in the brief. At page 117, Northstar says, the jurisdictional provision does not create causes of action. If there is a cause of action created by the Investment Company Act, the court has jurisdiction. The court has jurisdiction to hear a challenge by the SEC. The court has jurisdiction to hear the private rights of action created by 36B and 38, that Northstar recognized there. But 44 does not create a jurisdictional provision. He says there are a dozen cases, interpreting 47B, that give rise to a private right of action. The reply brief cited 14. In 12 of those cases, the claims were dismissed. They were dismissed because there wasn't a predicate violation alleged of the act or for some other reason. Not a single one of those cases did the analysis required of Sandoval. In every single, in the two cases that survived dismissal, there was a predicate violation of the Investment Company Act that gave rise to an independent cause of action. That's in there. Those are in the cases. Zare is one of them. And Lesler, one of their leading cases on this point. Kennedy. Were those two exemptions for investment companies and one other group that can actually bring suits? No. Not a single case interprets the continuing validity of an exemption. And that's what makes this case unique and even stronger than the North Star case. Because before you even get to whether there's a private right of action, you look at the exemption and say, this exemption is valid on its face. How does a private litigant challenge that issue? With respect to the derivative standing issue, the analysis isn't different whether you're suing derivatively or directly. And I think on this issue, Digimarc, this Court's decision in Digimarc is right on point. In that case, a derivative plaintiff brought a claim under Section 304 of the Sarbanes-Oxley Act. The Court did the sand of all analysis and said, you don't have a private right of action under Section 304. It doesn't matter whether you're suing derivatively or directly. Plaintiffs don't respond to that issue at all in their briefing. Didn't hear them respond to that issue at all today. Council pointed out three decisions that were cited in their briefs. Those are not Investment Company Act cases to begin with. They interpret consent decrees. They don't involve the statutory framework that is at issue here under the Investment Company Act, where, as Northstar held, there is a thorough delegation to the SEC. So we're definitely dealing with a different regime. Likewise, none of those cases dealt with a situation where there was no provision there was no channeled provision for judicial review, as here, where if there's an aggrieved party, a party aggrieved by an order or inaction by the SEC, they can petition to the Court of Appeal. There is redress, ultimately, for a litigant, for a private party in the courts. Plaintiffs make it seem like they're out of court. They're not. They go to the SEC, and if they don't like the result, they take it up. Obviously, there are multiple independent grounds that we addressed in our briefing to dismiss plaintiffs' claims. We didn't hear anything in the opening argument today about 17200, but he alluded to the fact that he was going to address that, so I'll just respond briefly. Counsel submitted a 28-J letter last week citing two Northern District decisions from about 10 and 13 years ago, respectively, saying that 17200 claims can be based on alleged violations of the Investment Company Act. Well, first of all, there has to be an alleged violation of the Investment Company Act before any claim can kick in. Second of all, that case said held that the Biven case that we cited wouldn't reach issues where there was a challenge under 17200 to investment advisor fees or policy changes under an investment company's policy. But the California Court of Appeals decision from 2004 in Bowen remains controlling, and it held you can't bring a 17200 claim based on a securities transaction. The predicate issue here, assuming they could get over the Exemption Company Act issue and show there was a violation of the conditions, is based on an investment in Alibaba. So Bowen is directly on point. It's still controlling law. Their authorities are old. They have nothing to do with the issues here. Help me a little bit, because you go pretty fast. How, by filing an application to the SEC, do they get their – are they assured that they can get the issue that they wish to raise to court? Under Section 43 of the Investment Company Act, the SEC – Just explain the process. They would write a letter. The SEC would review the letter. They would essentially recap the allegations that they've made in this complaint. The SEC's Division of Enforcement Investment Management would consider and write back and say, we agree, we're going to take enforcement action. Or, no, we don't agree. In response to that, in response to the SEC's action, presumably in order form – And the SEC has to take action on it? That's what I don't quite understand. Well, if they didn't take – Do they have to respond? If they – how can we make our government respond? The best way to respond if there's government inaction is to file a case in district court under the Administrative Procedures Act to compel the SEC to act. In that case, you just have the district court saying, SEC, consider this. It would go back to the SEC to consider, I think. But truly, there's never been a case where a private litigant has been able to challenge the continued ability of the Exemption Act. So it really is plaintiff's burden here to show the way to do it, because Congress didn't create a more specific or direct mechanism. And there's a reason, because they delegated the power to regulate and exempt and rescind and enforce issues to the SEC, because it's a highly regulated area. Well, 43 says, No objection to an order of the Commission shall be considered by a court unless such objection has been urged before the Commission, unless there are reasonable grounds for failure to do so. And then it goes on to say the findings of the Commission as to facts, if supported by substantial evidence, shall be conclusive. So it is your position that that argument requires, kind of as a matter of predicate condition, that you go through the Commission first? Yes. It definitely would have to go through the Commission first. That's consistent with Section 3B2. But that doesn't say the Commission has to take your objection. What if you file the objection and the Commission simply says we don't accept it? Then what do you do? And as I suggested, you know, I think it's plaintiff's job to figure out what to do there. But I think the Administrative Procedures Act would, you know, the answer to that is, you know, you'd have the Administrative Procedures Act potentially. But I do think the burden remains on plaintiffs to figure out the right court. But your response is it would be like, if anyone wrote to the EPA or any other government agency, there is a process whether people can challenge the inaction. And whether that's viable or not, that's an APA question, not a direct cause of action question. That is correct. No matter how the Court looks at it, I think, you know, rolling up the proverbial stone here of plaintiff's causes of action, there's no way you can get around Digimart, North Star, and the clear language of 30B2 and the lack of precedent. Thank you for your time. Your Honor, section 43 doesn't deal with the circumstance. It deals with the adoption or issuance of an order, that if we're injured by that, we can object or go to the court of appeals. There's nothing whatsoever to do with 15 years later the violation of a condition. I want to take a question.  What condition? What condition was violated? The condition that they used their money only for bona fide business purposes, which were defined specifically by the SEC in connection with adopting the order to be using the money that they had to enhance their Internet network and their R&D. Instead, what they did was take a billion dollars and buy from third parties, not from Alibaba itself, a large chunk in a hot growing public company. In connection with that transaction, they got registration rights with the intention of reselling that within a year. Okay? That is not consistent with the SEC's finding of what's a bona fide issue. They were over the edge. They were more than 40 percent in equities. That's the standard. After two tries, they tried in 1997 and then 2000, they got an exemption, a very limited exemption. The order itself says in it, the base is based on the information in the application and that it's consistent, has to be consistent with that information, and that the conditions contained herein. To require that the SEC monitor compliance with every order for 7,000 public companies and to say that because they didn't catch this one, we don't think is a fair and reasonable burden. They did hold Alibaba apparently for investment because they didn't sell it. But you're saying that they sought a registration to be able to sell? Correct. At the time they purchased it. So when they – and did they get that registry, that – right? The registration statement eventually did go effective, but they did sell it. So are you saying that – They did sell it. – that we look at what they preemptively sought rather than what they in fact did? What they in fact did was sell it. Yahoo was losing billions of dollars a year. They would not be able to have survived but for the money they got from selling the Alibaba stock. That's a fact that we pleaded. But I want to end with one thing, Your Honor. The position of the SEC is not from the SEC. It's from the Division of the Market Regulation, as we showed you. All of the authority with respect to exemptive orders has been delegated from the commission itself to individual staff members and their position. There's no question about this. This is a written letter. It's Excerpt of Record 649. And here's what they say. A market participant can rely on the relief only if the participant complies with the representations made in the request and with the terms and conditions imposed in response. The position of the SEC, which is undone by the decision below, which says that the SEC must revoke. The decision of the SEC by delegation to investment management for hundreds of orders and for hundreds of no-action letters which are under the same regime is undone by that decision, because they say immediately if you don't comply, the order doesn't work. The order says it's subject to conditions. When you don't comply, letter written by the investment management head in 2000, you don't have an order. What we're saying is there may be a fact issue as to whether compliance is there, but it's a small fact issue. And to deny the Court competence to address that under the broad jurisdiction here is to allow people to continue to violate the order. There is no mechanism to go to the SEC. Writing letters to the SEC doesn't get you a response. Writing letters to President Trump doesn't get you a response. That's not a legal remedy coming to court. Kennedy. Why isn't the suggestion that was made by Judge Schroeder about going to the APA for a order? Because I don't think they have to respond. I don't think that's a final action that's subject to the APA, writing a letter pursuant to my will but not pursuant to a procedure. I don't think the APA would apply to that. Any other questions, Your Honor? Thank you very much, Counsel. Thank you. Thank you, Counsel, for your argument. This matter is submitted.
judges: Ebel, Schroeder, Owens